UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Jan 25, 2017

| | | |
|---|---|---|
| IN RE ) | | |
| ) | | |
| WITTY, JOHN M. and VICCIJO, ) | Case No. 10-11643-R | |
| ) | Chapter 7 | |
| Debtors. ) | | |

| | | |
|---|---|---|
| JOHN M. WITTY AND VICCIJO WITTY, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| vs. ) | Adv. No. 16-1032-R | |
| ) | | |
| COMMUNITY RESTORATION CORPORATION; CLEARSPRING LOAN SERVICES, INC.; and SN SERVICING CORPORATION, ) | | |
| ) | | |
| Defendants. ) | | |

## ORDER DENYING SN SERVICING CORPORATION'S MOTION TO DISMISS

Before the Court is the Motion to Dismiss SN Servicing Corporation with Prejudice from Amended Adversary Complaint Pursuant to Bankruptcy Rule 7012(B), FRCP 12(b)(6) and Notice of Opportunity for Hearing (Adv. Doc. 21) ("Motion to Dismiss"), filed by Defendant SN Servicing Corporation ("SN") on December 12, 2016. Plaintiffs John M. Witty and Viccijo Witty (the "Wittys") filed their objection to the Motion to Dismiss (Adv. Doc. 24) on December 22, 2016.

**Jurisdiction**

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334, §§ 157(a) and (b)(1) and (2), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**Summary of relevant events in the Wittys' bankruptcy case**

On May 18, 2010, the Wittys filed for relief under Chapter 7 of the Bankruptcy Code, and on August 24, 2010, this Court granted the Wittys a Chapter 7 discharge, the effect of which is articulated in 11 U.S.C. § 524(a).[1] The discharge order entered by the Court explained to the Wittys, and to their creditors, that the discharge "prohibits any attempt to collect from the debtors a debt that has been discharged."[2] The discharge order further states that "a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect

---

[1]Section 524(a) provides, in pertinent part:

A discharge in a case under this title –

    (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title . . . ;

    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]

11 U.S.C. § 524(a)(1) and (2).

[2]Discharge of Joint Debtors (Main Case Doc. 18) at 2.

2

a discharged debt from the debtors,"[3] provided however, that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case."[4] The order advises that the "chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged," but also states that a debtor may voluntarily pay a discharged debt.[5] Finally, the discharge order informs that a "creditor who violates this order can be required to pay damages and attorney's fees to the debtors."[6]

In their bankruptcy schedules, the Wittys listed a debt owed to Bank of America ("BOA") in the amount of $52,365.00 ("BOA Debt") that was secured by a mortgage on 5453 North Frankfort, Tulsa, Oklahoma (the "Property").[7] As a listed creditor, BOA was given notice of the bankruptcy filing and of the discharge.[8] The discharge eliminated the Wittys' personal liability for all obligations related to the BOA Debt, but BOA retained its right to recover the amount of the debt through enforcement of its lien against the Property.

---

[3] Id.

[4] Id.

[5] Id.

[6] Id.

[7] Schedule D (Main Case Doc. 1). The Wittys also filed a statement indicating that they intended to surrender the Property to BOA. Chapter 7 Individual Debtor's Statement of Intention (Main Case. Doc. 1).

[8] See Certificates of Notice at Main Case Docs. 7 and 19.

The Chapter 7 Trustee filed a Report of No Distribution,[9] and on September 9, 2010, the bankruptcy case was closed. On September 20, 2016, the Court granted the Wittys' motion to reopen the bankruptcy case in order to afford them an opportunity to seek relief for alleged discharge violations. On October 21, 2016, the Wittys filed their Amended Complaint charging SN with contempt under 11 U.S.C. § 105 for violating the discharge injunctions set forth in 11 U.S.C. § 524(a) and in the discharge order. SN now moves to dismiss the claim against it under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")[10] for failure to state a claim.

**Well-pleaded factual allegations**

For the purposes of determining whether to dismiss the claim against SN under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to" the Wittys.[11] The allegations, and reasonable inferences that may be made therefrom, are summarized as follows:

In 2009, BOA had commenced a state court action against the Wittys seeking to collect the BOA Debt and to foreclose the Wittys' interests in the Property. The action was dismissed without prejudice prior to the Wittys' bankruptcy. Nevertheless, after the Wittys

---

[9]Main Case Doc. 8.

[10]Federal Rule of Civil Procedure 12(b)(6), made applicable in adversary proceedings by Bankruptcy Rule 7012(b), provides that a claim may be dismissed on motion if the complaint fails "to state a claim upon which relief can be granted."

[11]Casanova v. Ulibarri, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation marks and citation omitted).

filed bankruptcy, they filed an Advice of Bankruptcy notice in the BOA foreclosure case. In their bankruptcy case, the Wittys filed a Statement of Intention indicating their intention to surrender the Property to BOA.[12] The Wittys' discharge was granted in August 2010, and according to the Bankruptcy Noticing Center's certificate of notice filed in the bankruptcy case, the discharge order was electronically delivered to BOA on August 25, 2010. Thus, the Wittys allege facts sufficient to infer that BOA knew, and its agents and successors in interest had multiple opportunities to learn, that the Wittys' personal liability for the BOA Debt was discharged in bankruptcy.

In June 2015, approximately five years after the BOA Debt was discharged, BOA sent a letter to the Wittys notifying them that it had transferred the right to service the BOA Debt to defendant ClearSpring Loan Services, Inc. ("ClearSpring"). In July 2015, ClearSpring sent the Wittys a letter advising them that the balance of the BOA Debt was almost $50,000.00, and that they should "send all payments due on or after 07/15/2015" to ClearSpring.[13] ClearSpring sent the Wittys a second letter advising them that their "loan agreement require[d] [them] to maintain hazard insurance" on the Property, and that ClearSpring would force-place insurance on the Property at the Wittys' expense unless they provided ClearSpring with written proof of hazard insurance.[14]

---

[12]The Wittys believe that the Property was later sold by the Tulsa County Treasurer to recover delinquent ad valorem taxes.

[13]Amended Complaint ¶ 26.

[14]Id. ¶¶ 30-31.

In May 2016, the Wittys received a letter from SN (the movant herein) informing them that they "owe[d]" in excess of $60,000.00, to defendant Community Restoration Corporation ("CRC") (the "May 2016 Letter").[15] This correspondence – which referenced the Property, and thus implicated the BOA Debt – stated that SN was a "debt collector . . . responsible for servicing and collecting the debt" on behalf of CRC, and that SN was "attempting to collect a debt."[16]

Thereafter, SN sent the Wittys two additional letters informing them that unless they provided proof of hazard insurance on the Property, SN would purchase such insurance. SN advised that the Wittys would be obligated to "pay us for any period during which the insurance we buy is in effect but you do not have insurance."[17] In July 2016, after receiving the first insurance demand letter, Mr. Witty informed a representative of SN that the BOA Debt had been discharged in a 2010 bankruptcy. Two months later, however, in September 2016, SN's client, CRC, commenced a lawsuit in Tulsa County District Court seeking foreclosure of the Wittys' interest in the Property as well as a money judgment against Mr. Witty on the BOA Debt in the amount of $62,461.13 plus interest, taxes, fees and costs.

The Wittys assert that the collective conduct of the three defendants violated the discharge injunction imposed under 11 U.S.C. § 524(a) and the discharge order, rendering

---

[15] Id. ¶¶ 33-34.

[16] Id. ¶ 34.

[17] Id. ¶ 39.

each defendant liable for contempt under 11 U.S.C. § 105. The Wittys seek actual damages, including attorney's fees and costs, and punitive damages.

In its Motion to Dismiss, SN contends that its contact with the Wittys was limited to the three letters described above, and that the letters themselves, which were attached to the Amended Complaint, conclusively establish that SN was not attempting to collect a discharged debt from the Wittys.

**Motion to Dismiss Standard**

Under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true and read in the manner most favorable to the plaintiff, to "state a claim that is plausible on it face."[18] Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide only a short and plain statement of the claim "showing" that the plaintiff is entitled to relief.[19] To state a claim for contempt for violating the discharge injunction, a plaintiff must plead some facts that could allow a fact-finder to infer that the defendant (1) had actual or constructive knowledge of the discharge injunction and (2) intended the actions which violated the injunction.[20] Even if the conduct alleged is not specifically prohibited by the

---

[18] Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).

[19] "A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a), made applicable to this proceeding by Bankruptcy Rule 7008.

[20] Peyrano v. Sotelo (In re Peyrano), 558 B.R. 451, 457 (Bankr. E.D. Okla. 2016).

discharge injunction, a discharge violation may occur if "the creditor acted in a way as to coerce or harass the debtor improperly, i.e., so as to obtain payment of the discharged debt."[21]

**Analysis**

SN contends that "the allegations supporting liability against SN are limited to three exhibits that are attached to the Amended Complaint"[22] – i.e., the three letters SN sent to the Wittys – and argues that the content of the letters negates the allegation that SN intended to collect a discharged debt.[23] SN relies upon a disclaimer contained in the May 2016 Letter as undisputable evidence that SN did not intend to proceed against the Wittys to collect a discharged debt. The disclaimer provided:

> *NOTICE TO ANY CUSTOMER IN BANKRUPTCY OR WHO HAS RECEIVED A DISCHARGE IN BANKRUPTCY*: Notwithstanding anything in this notice to the contrary, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case, or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If these circumstances apply, this notice is not intended as a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, however, please also note that despite any such bankruptcy filing, we do continue to retain whatever rights we hold in the property that secures the obligation.[24]

---

[21]Paul v. Iglehart (In re Paul), 534 F.3d 1303, 1308 (10th Cir. 2008) (quotation marks and citations omitted).

[22]Motion to Dismiss at 2.

[23]Because the letters were attached as exhibits to the Amended Complaint, and neither party disputes the authenticity of the letters, the Court may consider their content in determining whether the Amended Complaint states a claim against SN. See Pace v. Swerdlow, 519 F.3d 1067, 1072 (10th Cir. 2008).

[24]Exhibit 6 to Amended Complaint (emphasis original).

Accordingly, argues SN, the Wittys should have simply disregarded the letter, notwithstanding that it references the BOA Debt, and states that the Wittys "owe $60,887.22," that SN is a "debt collector. . . responsible for servicing and collecting the debt," and that SN "is attempting to collect a debt."[25] SN did not identify the Wittys as having discharged the debt SN was "attempting to collect," but rather put the onus on the Wittys to guess whether or not SN intended to collect the $60,000 debt, which of course, was unknowable from the Wittys' perspective.

A month later, the Wittys received another letter from SN demanding proof of insurance on property they believed they had been surrendered to BOA in 2010. Two weeks later, the Wittys received another insurance demand letter. The Court notes that neither insurance demand letter instructed the Wittys to ignore SN's demand if the underlying debt had been discharged in bankruptcy. Instead, SN declared that the Wittys would be personally liable to SN for the cost of force-placed insurance on the Property, and that SN would attempt to collect the cost of insurance from the Wittys, to-wit:

> **Because hazard insurance is required on your property, SN Servicing Corporation plans to buy hazard insurance for your property**. You must pay us for any period during which the insurance we buy is in effect but you do not have insurance. . . . The insurance we buy: **Will cost an estimated $427.71 annually, which may be more expensive than you can buy yourself**."[26]

---

[25]Id.

[26]Exhibit 8 to Amended Complaint (emphasis original).

The insurance demand letters contradict the disclaimer contained in the May 2016 Letter. The Court concludes that the Wittys have stated a plausible claim that SN intended to collect a debt that had been discharged.[27]

Moreover, although Mr. Witty advised SN that the BOA Debt had been discharged in bankruptcy, shortly thereafter SN's client, CRC, filed an action to obtain a judgment on the BOA Debt against Mr. Witty personally.  SN contends that since it was not the plaintiff in that case, CRC's conduct cannot be attributed to it.  SN, however, was admittedly "responsible for servicing and collecting the debt,"[28] and the Wittys are entitled to discover the extent of its involvement in the filing of the lawsuit. The Amended Complaint contains sufficient facts to state a plausible claim that SN knew of the discharge, and participated in actions that resulted in a violation of the discharge injunction.

The Motion to Dismiss is therefore denied.  SN shall file its answer to the Amended Complaint on or before February 8, 2017.

**SO ORDERED** this 25th day of January, 2017.

*[signature]*
DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[27] See e.g., Lemieux v. America's Serv. Co. (In re Lemieux), 520 B.R. 361, 368 (Bankr. D. Mass. 2014).

[28] Exhibit 6 to Amended Complaint.