UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Feb 02, 2017

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| WITTY, JOHN M. and VICCIJO, | ) | Case No. 10-11643-R |
| | ) | Chapter 7 |
| Debtors. | ) | |

| | | |
|---|---|---|
| JOHN M. WITTY AND VICCIJO WITTY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Adv. No. 16-1032-R |
| COMMUNITY RESTORATION CORPORATION; CLEARSPRING LOAN SERVICES, INC.; and SN SERVICING CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) | |

ORDER DENYING
CLEARSPRING LOAN SERVICES, INC.'S MOTION TO DISMISS

Before the Court is ClearSpring Loan Services, Inc.'s Motion to Dismiss Plaintiffs' Adversary Complaint and Brief in Support (Adv. Doc. 27) ("Motion to Dismiss") filed by Defendant ClearSpring Loan Services, Inc. ("ClearSpring") on January 12, 2017. Plaintiffs John M. Witty and Viccijo Witty (the "Wittys") filed their objection to the Motion to Dismiss (Adv. Doc. 29) on January 26, 2017.

I.  **JURISDICTION**

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334, §§ 157(a) and (b)(1) and (2), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.   BACKGROUND - THE BANKRUPTCY CASE

On May 18, 2010, the Wittys filed for relief under Chapter 7 of the Bankruptcy Code, and on August 24, 2010, this Court granted the Wittys a Chapter 7 discharge, the effect of which is articulated in 11 U.S.C. § 524(a).[1] The discharge order entered by the Court explained to the Wittys, and to their creditors, that the discharge "prohibits any attempt to collect from the debtors a debt that has been discharged."[2] The discharge order further states that "a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtors,"[3] provided however, that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case."[4] The

---

[1] Section 524(a) provides, in pertinent part:

A discharge in a case under this title –

    (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title . . . ;

    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]

11 U.S.C. § 524(a)(1) and (2).

[2] Discharge of Joint Debtors (Main Case Doc. 18) at 2.

[3] Id.

[4] Id.

order advises that the "chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged," but also states that a debtor may voluntarily pay a discharged debt.[5] Finally, the discharge order informs that a "creditor who violates this order can be required to pay damages and attorney's fees to the debtors."[6]

In their bankruptcy schedules, the Wittys listed a debt owed to Bank of America ("BOA") in the amount of $52,365.00 ("BOA Debt") that was secured by a mortgage on 5453 North Frankfort, Tulsa, Oklahoma (the "Property").[7] As a listed creditor, BOA was given notice of the bankruptcy filing and of the discharge.[8] The discharge eliminated the Wittys' personal liability for all obligations related to the BOA Debt, but BOA retained its right to recover the amount of the debt through enforcement of its lien against the Property.

The Chapter 7 Trustee filed a Report of No Distribution,[9] and on September 9, 2010, the bankruptcy case was closed. On September 20, 2016, the Court granted the Wittys' motion to reopen the bankruptcy case in order to afford them an opportunity to seek relief for alleged discharge violations.

---

[5]Id.

[6]Id.

[7]Schedule D (Main Case Doc. 1). The Wittys also filed a statement indicating that they intended to surrender the Property to BOA. Chapter 7 Individual Debtor's Statement of Intention (Main Case. Doc. 1).

[8]See Certificates of Notice at Main Case Docs. 7 and 19.

[9]Main Case Doc. 8.

3

### III. ADVERSARY COMPLAINT AND MOTION TO DISMISS

On October 21, 2016, the Wittys filed their Amended Complaint charging ClearSpring with contempt under 11 U.S.C. § 105 for violating the discharge injunctions set forth in 11 U.S.C. § 524(a) and in the discharge order. ClearSpring seeks dismissal on two grounds: (1) improper service of process and (2) failure to state a claim for which relief can be granted.

#### A. Sufficiency of service of process

Under Federal Rule of Civil Procedure 12(b)(5), made applicable in adversary proceedings by Bankruptcy Rule 7012(b), a party may move to dismiss a complaint for "insufficient service of process."[10] ClearSpring contends that service of the summons and the Amended Complaint was improper under Rule 4(c)(2) of the Federal Rules of Civil Procedure ("Rule 4(c)(2)"). Rule 4(c)(2) states: "Any person who is at least 18 years old and not a party may serve a summons and complaint."[11] ClearSpring asserts that the Colpitts Law Firm (the Wittys' counsel) mailed the summons and Amended Complaint to ClearSpring's service agent, and argues that because Colpitts Law Firm is a "party" in this adversary proceeding, service was improper.

---

[10] Fed. R. Civ. P. 12(b)(5).

[11] Fed. R. Civ. P. 4(c)(2).

Rule 4(c)(2) is not applicable in bankruptcy adversary proceedings, however.[12] Bankruptcy Rule 7004(a)(1) incorporates some parts of Rule 4, but not Rule 4(c)(2). Instead of incorporating Rule 4(c)(2), Bankruptcy Rule 7004(a)(1) provides a modified version, *i.e.,* "*[p]ersonal service under Rule 4(e)-(j) F.R.Civ.P.* may be made by any person at least 18 years of age who is not a party."[13] Bankruptcy Rule 7004(b) then provides that "in addition to the methods of service authorized by Rule 4(e)-(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid."[14] By its very terms, the "not a party" restriction contained in Bankruptcy Rule 7004(a)(1) applies only to personal service under Rule 4(e)-(j), and not to any additional methods of service authorized in bankruptcy proceedings. If the restriction was intended to apply to all methods of service, the bankruptcy rules committee would have simply incorporated Rule 4(c)(2).

It is undisputed that the Colpitts Law Firm mailed the summons and Amended Complaint to ClearSpring's registered agent pursuant to Bankruptcy Rule 7004(b). Accordingly, Bankruptcy Rule 7004(a)(1)'s restriction on who may effect service does not apply. In any event, the Colpitts Law Firm is neither a plaintiff nor a defendant in this

---

[12] In arguing that dismissal is required under Rule 4(c)(2), ClearSpring represented to the Court that "[t]he Federal Rules of Civil Procedure apply in adversary proceedings, except in limited circumstances *not applicable here*." Motion to Dismiss at 4 n.1 (emphasis added). Bankruptcy Rule 7004(a), which itemizes which provisions of Rule 4 apply in bankruptcy, conspicuously omits Rule 4(c)(2). The omission/exception certainly is "applicable here." In turn, the cases cited by ClearSpring are not relevant because they are (1) not bankruptcy proceedings, (2) interpret and apply Rule 4(b)(2), and (3) involve attempted service by pro se plaintiffs.

[13] Fed. R. Bankr. P. 7004(a)(1) (emphasis added)..

[14] Fed. R. Bankr. P. 7004(b).

proceeding, and thus is not a party. ClearSpring's motion to dismiss for insufficient service of process is denied.

    **B.**    **Sufficiency of well-pleaded allegations to state a claim**

For the purpose of determining whether to dismiss the claim against ClearSpring under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)")[15] for failure to state a claim, the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to" the Wittys.[16] The allegations, and reasonable inferences that may be made therefrom, are summarized as follows:

In 2009, BOA had commenced a state court action against the Wittys seeking to collect the BOA Debt and to foreclose the Wittys' interests in the Property. The action was dismissed without prejudice prior to the Wittys' bankruptcy. Nevertheless, after the Wittys filed bankruptcy, they filed an Advice of Bankruptcy notice in the BOA foreclosure case. In their bankruptcy case, the Wittys filed a Statement of Intention indicating their intention to surrender the Property to BOA.[17] The Wittys' discharge was granted in August 2010, and according to the Bankruptcy Noticing Center's certificate of notice filed in the bankruptcy case, the discharge order was electronically delivered to BOA on August 25, 2010. Thus, the Wittys allege facts sufficient to infer that BOA knew, and its agents and successors in

---

[15] Rule 12(b)(6) is made applicable in adversary proceedings by Bankruptcy Rule 7012(b).

[16] <u>Casanova v. Ulibarri</u>, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation marks and citation omitted).

[17] The Wittys believe that the Property was later sold by the Tulsa County Treasurer to recover delinquent ad valorem taxes.

interest had multiple opportunities to learn, that the Wittys' personal liability for the BOA Debt was discharged in bankruptcy.

In June 2015, approximately five years after the BOA Debt was discharged, BOA sent a letter to the Wittys notifying them that it had transferred the right to service the BOA Debt to ClearSpring. In July 2015, ClearSpring sent the Wittys a letter advising them that the balance of the BOA Debt was almost $50,000.00, and that they should "send all payments due on or after 07/15/2015" to ClearSpring ("First Letter").[18] ClearSpring sent the Wittys a second letter advising them that their "loan agreement require[d] [them] to maintain hazard insurance" on the Property, and that ClearSpring would force-place insurance on the Property at the Wittys' expense unless they provided ClearSpring with written proof of hazard insurance.[19]

In May 2016, the Wittys received a letter from SN Servicing Corporation ("SN") informing them that they "owe[d]" in excess of $60,000.00, to defendant Community Restoration Corporation ("CRC").[20] Like ClearSpring did in its First Letter, SN stated that it was a "debt collector" and that SN was "attempting to collect a debt."[21] SN also informed

---

[18] Amended Complaint ¶ 26.

[19] Id. ¶¶ 30-31.

[20] Id. ¶¶ 33-34.

[21] Id. ¶ 34.

the Wittys that unless they provided proof of hazard insurance on the Property, SN would purchase such insurance at the Wittys' expense.[22]

Mr. Witty informed a representative of SN that the BOA Debt had been discharged in a 2010 bankruptcy. Two months later, however, in September 2016, CRC commenced a lawsuit in Tulsa County District Court seeking foreclosure of the Wittys' interest in the Property as well as a money judgment against Mr. Witty on the BOA Debt in the amount of $62,461.13 plus interest, taxes, fees and costs.

The Wittys assert that the collective conduct of the three defendants violated the discharge injunction imposed under 11 U.S.C. § 524(a) and the discharge order, rendering each defendant liable for contempt under 11 U.S.C. § 105. The Wittys seek actual damages, including attorney's fees and costs, and punitive damages.

In its Motion to Dismiss, ClearSpring contends that its contact with the Wittys was limited to the two letters described above, that ClearSpring was simply trying to enforce BOA's mortgage against the Property, an act that does not violate the discharge injunction, and that the letters themselves, which were attached to the Amended Complaint, establish that ClearSpring was not attempting to collect a discharged debt from the Wittys.

    1.    <u>Motion to Dismiss Standard</u>

Under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true and read in the manner most favorable to the plaintiff, to "state a claim that is plausible

---

[22] Id. ¶ 39.

on it face."[23] Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide only a short and plain statement of the claim "showing" that the plaintiff is entitled to relief.[24] To state a claim for contempt for violating the discharge injunction, a plaintiff must plead some facts that could allow a fact-finder to infer that the defendant (1) had actual or constructive knowledge of the discharge injunction and (2) intended the actions which violated the injunction.[25] Even if the conduct alleged is not specifically prohibited by the discharge injunction, a discharge violation may occur if "the creditor acted in a way as to coerce or harass the debtor improperly, i.e., so as to obtain payment of the discharged debt."[26]

2. Analysis

ClearSpring contends that the content of the letters negates the allegation that ClearSpring intended to collect a discharged debt.[27] ClearSpring argues that the First Letter, dated July 21, 2015 and entitled "Notice of Assignment, Sale or Transfer of Servicing

---

[23] Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).

[24] "A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a), made applicable to this proceeding by Bankruptcy Rule 7008.

[25] Peyrano v. Sotelo (In re Peyrano), 558 B.R. 451, 457 (Bankr. E.D. Okla. 2016).

[26] Paul v. Iglehart (In re Paul), 534 F.3d 1303, 1308 (10th Cir. 2008) (quotation marks and citations omitted).

[27] Because the letters were attached as exhibits to the Amended Complaint, and neither party disputes the authenticity of the letters, the Court may consider their content in determining whether the Amended Complaint states a claim against ClearSpring. See Pace v. Swerdlow, 519 F.3d 1067, 1072 (10th Cir. 2008).

Rights," was a "federally mandated 'welcome' letter informing Plaintiffs of the servicing transfer of their loan."[28] ClearSpring denies that it "demand[ed] payment, or request[ed] that payment be remitted" in the First Letter.[29] Whatever ClearSpring intended, however, the First Letter, on its face, states "the right to *collect payments from you* is being assigned . . . from Bank of America, N.A. to ClearSpring Loan Services, Inc."[30] The letter advises the Wittys to "*send all payments due* on or after 7/15/2015 to" ClearSpring.[31] The letter further states that as of July 21, 2015, the BOA Debt had a principal balance of $49,162.51, with a "*Payment Due* Date" of April 4, 2009.[32] From the tenor of the letter, an objective observer could infer that ClearSpring was attempting to collect the BOA Debt from the Wittys rather than simply enforcing a lien on the Property.

ClearSpring relies upon a disclaimer contained in the First Letter as indisputable evidence that its action was not an attempt to collect a discharged debt. The disclaimer, located in a footer in small inconspicuous type, provides:

> If you are in active bankruptcy or received a discharge which included this debt, this communication is not intended to be and does not constitute an attempt to reaffirm or to collect a debt against you personally and is for informational purposes only.[33]

---

[28] Motion to Dismiss at 6.

[29] Id. at 6-7.

[30] Exhibit 4 to Amended Complaint at 1 (emphasis added).

[31] Id. at 1 (emphasis added).

[32] Id. at 2 (emphasis added)..

[33] Id. at 1.

The disclaimer language was directly below another notice stating:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.[34]

And that notice was preceded by another notice in bolded capital letters declaring:

> **UNLESS YOU NOTIFY THIS OFFICE WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THIS DEBT OR OBTAIN A COPY OF A JUDGMENT AGAINST YOU AND MAIL YOU A COPY OF SUCH VERIFICATION OR JUDGMENT. ALSO UPON YOUR WRITTEN REQUEST WITHIN THE THIRTY (30) DAY PERIOD, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF IT IS DIFFERENT FROM THE CURRENT CREDITOR. FURTHERMORE, YOU UNDERSTAND THAT THIS NOTICE IS FROM A DEBT COLLECTION AGENCY AND WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.[35]**

ClearSpring argues that the Wittys should have simply disregarded the letter, notwithstanding that it references the BOA Debt with a balance of $49,162.15, directs the Wittys to submit payments on the BOA Debt to ClearSpring, and states that "**YOU UNDERSTAND THAT THIS NOTICE IS FROM A DEBT COLLECTION AGENCY AND WE ARE ATTEMPTING TO COLLECT A DEBT.**"[36] ClearSpring did not identify the Wittys as

---

[34]Id. (emphasis original).

[35]Id. (emphasis original).

[36]Id. (emphasis original).

having discharged the debt it was "attempting to collect," but rather put the onus on the Wittys to guess whether or not ClearSpring actually intended to collect the debt, which of course, was unknowable from the Wittys' perspective.

Ten days later, the Wittys received another letter from ClearSpring demanding proof of insurance on property they believed had been surrendered to BOA in 2010 and had been sold at a tax sale. After identifying the Property, ClearSpring declared that the Wittys' **"loan agreement requires you to maintain hazard insurance on the above property at all times**," and that unless the Wittys provided proof of insurance, ClearSpring would "purchase a lender placed hazard policy **at your expense**" which would cost **"an estimated $427.68 annually, and may be significantly more expensive that the insurance you can buy yourself**."[37] Although the insurance letter contains a disclaimer similar to the one in the First Letter, the disclaimer again fails to provide enough information to allow the Wittys to determine whether ClearSpring intended to buy insurance at the Wittys' expense.[38] The

---

[37]Exhibit 5 to Amended Complaint (emphasis original).

[38]ClearSpring compares its conduct with that of Wells Fargo Bank in the In re Jester case wherein the bankruptcy court, as affirmed by the bankruptcy appellate panel ("BAP"), determined that Wells Fargo did not violate the discharge injunction. The Jester case is distinguishable on its facts.

First, the conduct questioned by the debtors in Jester arose from a post-discharge agreement between the debtors and Wells Fargo wherein the debtors, wishing to retain their home, agreed to pay Wells Fargo monthly payments in exchange for Wells Fargo's forbearance from foreclosing on the home. In re Jester, 2015 WL 6389290 (B.A.P. 10th Cir. October 22, 2015). The Jesters voluntarily communicated and contracted with Wells Fargo post-discharge in order to keep their home, whereas, in this case, the Wittys received unsolicited communications that on their face requested payments be made to ClearSpring on discharged BOA Debt, and which occurred more than five years after the Wittys surrendered the Property.

(continued...)

Court concludes that the Wittys have stated a plausible claim that ClearSpring attempted to collect a debt that had been discharged.[39]

ClearSpring further claims that the Wittys' Amended Complaint does not meet the burden of showing "by clear and convincing evidence" that it is entitled to punitive damages for willful violation of the discharge injunction.[40] At this stage of the proceeding, the Wittys are not required to catalog all known or discoverable evidence in support of their claim. Rather, they are simply required to provide "a short and plain statement of the claim showing

---

[38](...continued)
Second, ClearSpring contends that its disclaimer was similar to the disclaimer in the Wells Fargo/Jester agreement that the BAP concluded did not violate the discharge injunction. Motion to Dismiss at 5. In Jester, however, Wells Fargo fully acknowledged that the underlying debt had been discharged, and the disclaimer was one of at least five provisions that recognized the discharge and reiterated that the agreement "did not revive or create any personal liability on a discharged debt." Jester, at 6-7. ClearSpring's unsolicited communications to the Wittys contained language disclaiming an intent to collect a debt in the event the debt had been discharged in bankruptcy, but nothing in the letters acknowledged that the BOA Debt had been discharged.

Finally, ClearSpring relies on Jester for the proposition that efforts to exercise *in rem* remedies against collateral does not violate the discharge injunction. Motion to Dismiss at 6. Wells Fargo foreclosed on the home after the Jesters failed to make the promised monthly payments, exercising its surviving *in rem* rights rather than seeking payment of the discharged debt from the Jesters. The letters sent by ClearSpring, however, do not even mention potential *in rem* remedies against the Property; they focus solely on collecting the BOA Debt.

[39]See e.g., Lemieux v. America's Serv. Co. (In re Lemieux), 520 B.R. 361, 368 (Bankr. D. Mass. 2014); In re Nordlund, 494 B.R. 507, 519 (Bankr. E.D. Cal. 2011) (series of letters from lender containing conflicting statements concerning intent to collect the debt was found to be "a deliberate attempt by [the lender] to sow confusion and doubt as to whether it would recognize the debtor's discharge.")

[40]Motion to Dismiss at 8.

that the pleader is entitled to relief; and [] a demand for the relief sought, which may include relief in the alternative or different types of relief."[41]  The Wittys have met this standard.

## IV.  CONCLUSION

The Motion to Dismiss is denied.  ClearSpring shall file its answer to the Amended Complaint on or before February 16, 2017.

**SO ORDERED** this 2nd day of February, 2017.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[41] Fed. R. Civ. P. 8(a)(2) and (3).